Madam Clerk, will you please call the first case? United Federal Mortgage Securities Bank, FSB v. Tandon Okay, I'd like the attorneys to step up to the podium. I want you to tell the court who you represent, your name, and approximately how much time the argument will take. Good morning, Your Honor. Let everybody step up. Will the ladies first? Good morning, Counsel. Good morning. My name is John Sullivan. I represent the Plaintiff Appellant Bank Financial, FSB. Wait a second. How much time will your argument take? I anticipate about ten minutes, Your Honor. Ten minutes. Very good. Good morning, Counsel. Good morning. My name is Michelle Razovic. Would you like me to say that? Please. It's R-O-V like in zebra, O-V like in Victor, I-C like in Charles, S like in Sam. I represent the defendant, Amitron, A-M-I-T-R-O-N, Inc., and I'll be taking about 13 minutes. Okay. Have you discussed your case with your co-counsel? Yes, we have. Have you divided the time? Yes, we have.  Good morning, Counsel. Good morning, Your Honor. My name is Dan Dawson. I represent Mr. Tandon, one of the defendants at the lead. We had discussed splitting the 20 minutes about two to one, so Counsel, for Amitron, I was hoping to get about 13 minutes. I was hoping to get about ten. Okay. Very good. Okay, Mr. Sullivan, do you need any rebuttal time? I would reserve any additional time for rebuttal. I would anticipate no more than two to three minutes. Okay. Well, you have ten because they're taking 20 minutes. All right, very good. Why don't the two of you have a seat? Mr. Sullivan, why don't you proceed with your argument? Thank you, Your Honor. May it please the Court, my name is John Sullivan. I represent Bank Financial in this case. This appeal involves the misapplication of the equitable doctrine of res judicata. When I say misapplication, I mean it fails for a lack of an essential element, namely a final order that firmly and finally disposes of an issue between the parties. So the September 8th order and the February 4th DWP order, those orders are not final orders? That's correct, Your Honor. Why not? Well, first of all, since 1982 in Flores v. Dugan, the Illinois Supreme Court has told us that a dismissal for want of prosecution order is not a final order. And it doesn't become final until such time as the period for refiling under 13-217 has expired. Flores has been echoed throughout the last 31 years. In S.C. Vaughn v. Trout, the Court again reaffirmed that a DWP order is not final, doesn't become final until the period for refiling has expired. Well, the argument of the defendants is that, as I understand it, is that at the time of the entry of the February 4th, 2008 DWP, that interlocutory order made the 2006 order of Judge Quinn final. I believe that's their argument. I believe that's their argument as well, Your Honor. Okay. I believe it's flawed because this is not a voluntary dismissal. I think that Hudson and Rhine, Dubina v. Mesereau, all of those cases stand for the well-established proposition, again, first established in Flores v. Dugan, that a voluntary dismissal results in all prior interlocutory orders entered in that case becoming final and appealable. That's not in dispute. This was not a voluntary dismissal. So what we've got is kind of circular reasoning here. Hudson stands for the proposition, picking up and relying and finding Rhine as dispositive, that if you've got a plaintiff who has gone to final order on any aspect of the case, in Rhine there was no dispute. In Rhine there were rescission counts that were alleged, and those were all barred by the statute of limitations, and they were all dismissed, and the dismissals were with prejudice. And in Rhine what the plaintiff chose to do was then voluntarily dismiss the balance, and there were a number of other statutory securities counts pending, dismiss the balance of all remaining claims, and then file the notice of appeal from the final orders that were entered with respect to the rescission claims. The appeal was ultimately unsuccessful, and not until 17 months after the voluntary dismissal, strike that, until after the orders that resolved the rescission claims did Rhine file another complaint. And that complaint, under well-established case law, becomes subject to, even though it's not time-barred, it becomes subject to defenses such as laches and res judicata. All of those cases are distinguishable because there was no voluntary dismissal in this case. Rather, the bank financial 2003 case was disposed of by DWP order, and the defense has cited no case law for the proposition that upon entry of a DWP order, all prior interlocutory orders in that 2003 case became final and appealable. Rather, the circularity of the argument is that, well, gee, in order to invoke Hudson and Rhine and Dubina and his progeny, we need to find a final order. But the case law is clear. If there is no final order, there is no claim splitting. And that's what we have here. Because if you look at the language of Hudson, and again, picking up on Rhine, on Hudson, at page 473, the standard is set. And it says, quote, Hudson, at 473, citing Rhine at 337. What's missing here? There never was, as the trial court correctly and expressly found, there never was a final order entered in the 2003 case. Where do you think the trial court went wrong? I've been before the trial judge on a number of complex issues, and this one was not an easy one. And the court allowed the parties extensive supplemental briefing on this issue, because it was potentially dispositive. The trial court examined the circumstances of the order entered September 8, 2006. The trial court expressly found, and I want to quote the trial court on this issue. She, meaning Judge Quinn, signed an order that specifically said it was stricken without prejudice. And without prejudice indicates to the court that Bank Financial had opportunity to refile the foreclosure count at some later date. Which is, you agree with it? I absolutely think the court got that right. But then the court analyzed the case as though it was the standard in Hudson, Rhine, and Dubena. Namely, that it was a voluntary dismissal, which then would have made all prior interlocutory orders final and appealable. But that's not the law. The law, instead, is set forth in Flores v. Dugan, and the other cases that we cited in our briefs. The S.C. Vaughn v. Trout case, and particularly the Smith v. Pace case. And that's at 323 Hill F. 3rd, 1067. That case says, quote, As a result, the order granting the plaintiff's motion to voluntarily dismiss his original action never acted to fix absolutely, and finally, the rights of the parties. Consequently, the non-final character of the order from the standpoint of the plaintiff was never altered by the expiration of the refiling period. That case held that where there was a timely refiling, all interlocutory orders entered in the case were permanently rendered interlocutory in nature. The only way that the character of an otherwise non-final order changes to a final order is by expiration of the saving statute time for refiling. So, yes, I believe the court got it right in looking at the character of the order at the time that it was entered. And we have extensively briefed that, and the court considered every circumstance attendant to that order being entered. The court got it wrong in then analyzing the case from the standpoint of a voluntary dismissal. And absent a voluntary dismissal, you have no claim splitting. So that's where I think the trial court got it wrong, Your Honor. Now, by extension, if the trial court opinion is affirmed here, it suggests that bank financial engaged in claim splitting by not refiling count one, which was the leasehold foreclosure claim. That doesn't make any sense, frankly, Your Honor. That would be claim splitting by subtraction, I suppose, and it seems to suggest that the plaintiff, in order to properly avail itself of the saving statute of 13-217, has to file a mirror image of the complaint that was dismissed. That's not the law. It hasn't been the law. If it were the law, then under no circumstances would anyone be able to avail itself of the saving statute where the circumstances from the dismissal order of the prior case until the refiling date had irrevocably changed. Nothing changed here. Nothing changed here. But if the court is saying that we engaged in claim splitting by not refiling the exact complaint as that which was subject to the prior dismissal order, then a lot has changed. I can't, as the plaintiff, file a count that I know to have no basis in factor law without subjecting my client, myself, my firm to the possibility of sanctions under Rule 137. Well, you'd already voluntarily dismissed it. But if I had to refile that count knowing that the collateral that was supposed to be secured by that leasehold mortgage was constructed on another portion of the property never secured by the mortgage, and if I had to... What about the other counts? You had two other counts you didn't replete. Well, that's an interesting point. You're right, Your Honor. I guess let's get the party straight if we can. Bank Financial obviously is the secured lender, although not as well secured as it thought it once was. American Environmental Incorporated was the mortgagor. They owned the property or the leasehold that was supposed to be where the co-generator power equipment was built. Mr. Tandon was an individual borrower on three notes, each of which was subject to a count in the complaint in 2003. There were two notes that were paid off through settlements and through a UCC sale of the co-generator equipment. For the same reason that the plaintiff could not, in good faith, refile a leasehold foreclosure count knowing it had no basis in fact or in law, it could not refile a claim based on breach of a $66,400 note or an $80,000 note that were the subjects of counts four and five of the 2003 complaint, knowing full well that those notes had been satisfied. And I think it's interesting that Mr. Tandon doesn't raise or adopt the argument of Amatron in this case as to the effect of failing to replete all counts because Mr. Tandon knows darn well he can't make that argument. The notes were paid in full, they were duly credited, and Bank Financial could not restate counts one, four, or five of the 2003 action. All the court has to do is take a look at the case law to realize there is no requirement of a mirror image refiling under 13-217. All that is necessary is that the refiled complaint be the, quote, same cause, end quote, as that which was subject to the prior dismissal order. Same cause in Flores v. Dugan, in all the cases since that time 31 years ago, means that it arises out of the same operative core of facts. Now the trial court correctly noted that the counts that were subject to the refiled complaint in 2009 were identical to the breach of note and the breach of guarantee counts that were at issue in the 2003 case. And I'm talking about the $1.28 million note that was the subject of count one of the 2003 complaint. That's the same cause. The refiled complaint is the same cause for purpose of the same operative core of facts. If you take a look at River Park v. City of Highland Park, 1998, it says the same cause means the case arises from the same set of operative facts, no matter whether different theories of recovery are asserted within a cause of action. The case law says there's no mirror image requirement, and that's clear. Mabry v. Bowler, B-O-L-E-R, that's a first district case from last December, December 2012. It was a refiled complaint alleging personal injury and property damage arising out of an auto accident. The prior case had been the subject of a dismissal order, and that prior case alleged only property damage arising out of that auto accident. The court took a look at it and said that's the same facts, you don't have to file a mirror image. That's clear. Apollo Real Estate Investment Fund v. Gelber, G-E-L-B-E-R, first district 2009 case. The refiled complaint added a completely new claim for unjust enrichment. The court took a look at that from a same cause analysis and found that it was the same cause. Whether new or additional theories are added, it's not dispositive. E&V Marketing v. Ryan, first district 1991. The complaint that was refiled alleged breach of contract, but the court found that it was the same cause as a prior lawsuit that was subject to a dismissal order seeking relief on the basis of an accounting. D-Last v. Ugent, first district 1997. That was a refiled lawsuit asserting about a dozen new claims in addition to the dozen claims that were previously asserted and are subject to a dismissal order. Again, it's the same cause. So I submit that Bank Financial's refiled complaint in 2009 was the same cause and any inference that a mirror image is required to avoid the prospect of claim splitting is simply not in keeping with the law. Otherwise, none of the cases I just cited for the court would have gone through the tortured analysis of whether or not it's the same cause. They would have just said, well wait, that's not a mirror image, that's dispositive. Neither the Supreme Court nor the first district in any of the cases I've cited did that. Because that's not the law. By extension, we submit that if the trial court's decision is upheld and there is some sort of de facto mirror image requirement under 13-217, then no plaintiff could ever avail itself of the savings statute in a circumstance where one of the original parties had died, one of the original parties was subject to automatic stay by bankruptcy, one of the original parties to the lawsuit was incapacitated. What then would a plaintiff do if it can't avail itself of the savings statute? And again, the savings statute is remedial. And it's designed to avoid procedural speed bumps. Can I reserve 20 seconds? You get as much time as you need. All right. Well, thank you. Actually, my comments are just about over, but I would like to comment on a couple of specific issues that Mr. Tandon had identified in his brief. One is a mea culpa for me, and the other is a shame on them. Starting with the latter, there's an additional argument raised by Mr. Tandon that the final order requirement that is absolutely necessary to invoke the Doctrine of Race Judicata can be found in a 2005 decision by Judge Mason in the same case that dismissed with prejudice certain of Mr. Tandon's affirmative defenses and counterclaims. Yes, now we have the final order requirement necessary and absolutely required for race judicata. But now we have another problem. That argument is fatally flawed for failure of another element that is essential to invoke the Doctrine of Race Judicata, namely an identity of the cause of action. Whether Mr. Tandon's defenses or counterclaims were dismissed with prejudice has nothing to do with race judicata because that's got nothing to do with any claim asserted by bank financials. So that issue, and the trial court correctly found, looking at the Avery v. State Farm case relied upon by Mr. Tandon, that issue can never satisfy the final order requirement of race judicata as to bank financials claims. The other issue that was raised in Mr. Tandon's brief is with respect to a hearing that occurred in February of 2011 before the trial court at which I appeared shortly after receiving what is probably about 5,000 pages in briefs. I think there were six or eight contested motions heard at that February 2011 hearing. The transcript of that hearing is in the record. And on the court's inquiry about the character of the order that was entered by Judge Quinn, September 8, 2006, I said it was, I think, a dismissal with prejudice. Well, shame on me. And I will tell the court, as I've expressed in supplemental briefs, that's the product of someone who is less than informed about all the facts and circumstances, being asked the question, answering the question, and getting it exactly wrong. So shame on me. I think it's for much smarter people than I, people who wear robes, to determine the character of an order entered in the court. That's not for me. I'm not capable of determining what the character of that order is. Judge Pierce in the trial court was capable of making that determination, did make that determination, got it exactly right, but the rest of the analysis is flawed. We would ask that the trial court's order granting summary judgment to the defendants based on the doctrine of race judicata be reversed, and that the case be remanded for further proceedings. Thank you. And unless the court has further questions, I will reserve any additional time in your budget. Any questions? Thank you very much. Thank you. Your Honor, I'm- You need to step up and speak up. I understand, but- No, please. Good morning, Your Honors. Michelle Razovic on behalf of the defendant Amatron. What I was going to ask for was an accommodation this morning. I had a back spasm on the way to court, and if I need to, if I could have permission, halfway through my argument, if I need to sit down, if I could have that permission, I may be okay. We're certainly going to accommodate you. I may be okay, and I'll try to handle- What I'm going to attempt to do is get a microphone. Okay. Because we do want to record it, but you proceed. We'll let you sit if necessary. You just stop and take a recess. All right. Please proceed. Again, Your Honors, Michelle Razovic on behalf of Amatron. To start with, Your Honors, counsel mentioned towards the end of his argument, counsel for the plaintiff mentioned towards the end of his argument, that there was an admission during some of the proceedings that he had characterized the order of September 8, 2006 as a final order. And, you know, obviously one of the real cruxes of the issue here is whether or not, in order to meet the requirements for res judicata, there was a final order preceding the dismissal for want of prosecution, which occurred in 2008. We do believe, and as we set forth in our brief, that that order became final, as Judge Pierce set forth, upon the entry of the dismissal for want of prosecution. You say that order. Which order are you referring to? I apologize. The September 8, 2006 order became final by virtue of operation of law through the rules of civil procedure, because all of the interlocutory orders did, in fact, become final. When the Bank Financial I case terminated. You say it terminated in 2008. In 2008, correct. Don't they have a right under 12-217? They do have a right under 13-217 to refile the case. But we have a right, as the law has set forth in McKaplick as well as in Ryman, that we have a right to assert our defenses of res judicata when they file their refiled case. It's not, the rules work together. So where's the final order? That's, it preps, and I think you say it in your brief. Exactly. Where's the final order for res judicata? The final order for res judicata is the 9-8-0-6 order. The 9-8-0-6 order. Okay. So how could that be a final order when it was stricken without prejudice by the plaintiffs? It became a final order, we believe, as of the time the dismissal for want of prosecution was entered by operation of law. Well, doesn't the DWP, you have one year after DWP to refile. So you're saying that that one year doesn't apply? No, that's not what we're saying at all. Here's what we're saying. We're saying there were five counts in the original complaint. Count one, which was for the foreclosure. And they dismissed that voluntarily. And that was the one that was, that's the one that was stricken. But they dismissed it. It was non-suited. There's a question as to exactly what happened, but taking the plaintiff's version, they voluntarily dismissed it. Well, let's take the court's version. The court entered an order, Judge Quinn entered an order saying it was non-suited. Is that correct? Judge Quinn entered, the order that Judge Quinn signed said that it was stricken. The transfer, administrative transfer order that she signed said it was non-suited and then transferred it to the law division. And there is some discussion to be had, and I think this is something that the court should take into account, is the issue about what was the finality of that order. Counsel for the plaintiff made a very long argument talking about how final their decision was, that they could no longer ever in any circumstance pursue count one. As a substantive matter, they couldn't do it because if they did, they'd be subject to 137 sanctions. But that's the relevance of that. You're saying, you know, he was talking about a mirror image. Okay. So, as you're saying, the law is that you have to file the exact same case. Exactly. That is not what we're saying. Okay. So, he voluntarily dismissed count one, didn't refile that because he said he didn't have a basis for it. So, he wasn't going to refile it. And then, with regard to two other counts, your codefendant had resolved it. So, he couldn't bring those. They would have been wrong, too. So, he brought the only claims that still had a life in them. But let's talk about the fact that the three claims that he says he couldn't bring anymore, he couldn't bring them because he said they were substantively impossible for him to bring. Does that make it a final order? Does that make it a final disposition that we would require for rest judicata? What's a final disposition? Doesn't final mean that there's something involuntarily involved? No. You know? If somebody enters a voluntary dismissal with prejudice. Well, we're not talking about this. But that's in our case. So, let's talk about our case. But we are. No, this was without prejudice. But when it was entered, if you take a look at that transfer, before the transfer order, take a look at the judge's order. And if we take a look at the judge's order that was entered on 9806, at the same time that the order was entered, it was then immediately transferred out of Chantry where the only foreclosure claims are handled in Cook County. Wait, wait, wait. The judge wrote, count one, foreclosure, or she's saying in other words, count one foreclosure, leave. I can't read it. But the important word is stricken without prejudice. Okay? You agree with that? I do agree with the order. Okay. So, it was stricken without prejudice. However, if you take a look at the Matajek v. City of Chicago case, there is authority to say that the words without prejudice do not necessarily and only mean without prejudice forever. The circumstances of the case and how the case is treated can, in fact, change the nature of the order. And, in fact, there's another authority that we cited in our brief as well that says that the nature of an order can change based upon subsequent actions in the case. Well, what subsequent? That's the thing that I don't understand because you have a non-suited, a struck, however you want, without prejudice. So, that means that count is gone. Because that was the only count that was appropriate in Chantry, right? If it's an equitable count, then the appropriate thing is to transfer the case to the law division. And that's what was done. Okay. So, all of the plaintiff's authority for when these types of orders are non-final and these types of orders can come back, all of the plaintiff's authority for that is when the court grants an amendment. Okay? I don't understand. Okay. The finality of the order is evident because of the fact that the court did not grant any amendment for filing an amended complaint. Why would they grant an amendment? They didn't want to amend it. They said they had no claim. You're telling me that somebody who has no claim has to keep that claim? No. What we're arguing is that since the plaintiff is saying they have no claim, that then amounts to a substantive disposition, voluntary or non-voluntary. Okay. Then let's find out. You tell me. How is that substantive? Tell me how that's on the merits. That's what's required for race judicature. That amounts to a substantive, voluntary, substantive disposition on the merits. Which case is that? That is based on the plaintiff's own admission. No. No admission. I'm asking you for a case. He didn't admit that. There's no way he admits it. He doesn't admit that, does he? He said he made a mistake in his wording. Besides that, where is that admission? In the affidavit of Mr. Crowley. In the affidavit of Mr. Crowley, which is attached to both the underlying pleadings as well as attached to the appellate court record, Mr. Crowley says, we could not bring this case back. That's right, because it was not a proper claim. If you file a complaint and you have five claims and you say one of those claims makes no sense, I decide I don't want to do it, and you dismiss it because you strike it voluntarily. I'm getting rid of it. So that turns back to haunt you? I'm trying to understand. There's no distinction. There's no adjudication on the merits. There's a determination that there's no substantive basis to pursue this claim, so they voluntarily dismiss it. So if they voluntarily dismiss it and they determine that there's no substantive basis for pursuing this claim, at the time that the DWP is entered and they determine that they're not going to pursue this claim anymore and they're not going to bring it back in the subsequent litigation that they file, and, in fact, they determine that the only counts that they're going to bring back are counts two and three, I think. Kathy, this is the question I have for you. What issue was decided on the merits when the court entered the September 8, 2006, voluntary dismissal order? What issue was decided? The issue that was decided on the merits was that by virtue of operation of what? He said he didn't want to pursue that count. Nothing's decided on the merits. He says, I don't want to go forward on count one. I want to dismiss it. Nothing's decided. So at that point, the matter is, okay, so let's suppose we agree that at that point Well, do we agree that no issue was decided on the merits when the voluntary dismissal order was issued? I agree that that is the position that Judge Pierce has taken in the underlying case. And you feel Judge Pierce is wrong? I'm sorry? Tell me what issue was decided. I agree that that was the opinion that Judge Pierce has taken. I just want you to tell me this morning. What issue was decided when the voluntary dismissal order was issued? When the voluntary dismissal was decided, based on where we stand today, okay, However, at the time of the DWP, okay? So that becomes, so at the time of the DWP, two years later. So we're going to the February 4, 2008 order. Correct. We're going forward. So at the time of the DWP, two years later, okay? When that fourth DWP does not get vacated, okay, so it's 30 days later, March 5th. So on March 5th, that becomes, the court loses jurisdiction, okay? So the court loses jurisdiction over Bank Financial 1. That's not to say that if the plaintiff had chosen he couldn't file a 1401 petition, he never did, but that option was available to him. That's not to say that he couldn't file a, sorry, a savings clause complaint on all five of the counts. No way, that's easy. He didn't choose to do that. He chose to file it on two. That's right. And that's where the rubber meets the road. What is wrong, again, I mean that was my question, what is wrong? You're saying it's okay. You just said it. It's okay, 13217, it's okay that what he did, except it's not okay unless you bring back, so even if you settle two of the claims, you have to refile those two claims you settled, right? That's what you're saying. You have to refile. The law is that you have to refile claims that you settled. Is that correct, yes or no? Well, as far as whether they've been settled, if they've been settled, no, you wouldn't have to bring those back. That's what we're being told. But that's not what happened on count one. One was voluntarily dismissed without prejudice. Okay, but what happened on one, and here's where the operation of the Rules of Civil Procedure go on count one, okay? So when the plaintiff chose not to refile on count one because they said we don't have the facts or the law to follow that up, what happens is then the DWP back on February 4, 2008, which was never vacated 30 days later, that becomes a final order. But that's true. Doesn't that vitiate then the 13217, the Code of Civil Procedure? It does not because if you take a look even at the case file that the plaintiff cited to you during his own argument, the F.C. Vaughn case, the F.C. Vaughn case was very clear, and it says plaintiff is in control of what he chooses to do, whether he chooses to do what he's eligible to do under Section 1301E, whether he chooses to do what he's eligible to do under Section 1401, or whether he chooses to do what he's eligible to do under the Savings Statute. And when he doesn't, if he chooses one of those options that, you know, as a result, results in the operation of the Supreme Court rules regarding claim splitting, that is to his peril. Wait a minute. No, go on. Before we get to claim split, what does it mean to strike? I'm sorry? What does it mean to strike? Striking, the only section of the Rules of Civil Procedure that deal with striking is Section 2615 of the Code of Civil Procedure. And we did define that in the underlying brief in the trial court, and I'm doing this from memory, but it is, to strike is, it is done either on motion of the court or on motion of a party, and it is where something is insufficient as a matter. No, but when the plaintiff does it through their own complaint, doesn't that make it a nullity? What they're saying is it's as if it never existed. When I strike, if you have a deposition, you say, I strike that. I mean, it's as if I didn't say it. Not according to the Rules of Civil Procedure. But they didn't file under 615. That's something a defendant would file on the plea. So it couldn't mean that. That means what you're saying is that someone cannot use the word strike when a plaintiff wishes to get rid of a claim. It's an impermissible thing. Is that what you're saying? When I operate in court, Your Honor, as I expect all plaintiffs and all defendants, and all plaintiffs and all defendants counsel, I believe we are all bound by the Rules of Civil Procedure in the state of Illinois. It wasn't a 615 motion filed, was it? We don't know whether somebody made a motion orally, and according to Mr. Crowley's affidavit, that's what he claims he did. If that motion is considered by the court to be a motion to strike under 615, a motion to voluntarily strike his count, it is incumbent. And if you take a look at that. Let's look at what we have. There's no word 615 in the order, right? And what we do have is another order, and we can read those two orders together because they're by the same judge within days of each other. It said non-sue. Which is not defined in the Code of Civil Procedure, so that seems like a vague term. So we can't use the word non-sue? We can't use the word strike? Is that what you're saying? I think we can use the word strike because that is one that is defined within the Code of Civil Procedure. That is the one that we do have. That is the one that would be considered to be, according to the case law, when we're interpreting a court order, we do have that citation in our brief as well, we're going to interpret it in the ordinary course of its meaning. And if there is something that is vague or ambiguous, it is incumbent upon the party who considers the order to not be reflective of the intention to correct it. But wait a minute. You have the burden, right? On this case, you have the burden. Okay, so let's start with that. So you have the burden, and we have this stricken without prejudice, which under normal, ordinary terms would mean they don't want that claim alive anymore. So they got rid of it. They have it all the time. Every day in court, plaintiffs are striking claims, but they don't want to proceed anymore with it. And they did proceed it. So they didn't proceed on it. Then you talk about claim split. Well, how does, I mean, they're not even heard by the same court, because once a foreclosure is an equity claim, and the other was a note and a guarantee. So how is that same active effect even relevant when you come to claim split? Because when you're dealing with, they all came out of the alleged default and failure to pay on this, for this property. And, again, according to claim split, or, you know, according to the principle of res judicata, it says that if there is a disposition on one count, the plaintiff is incumbent to try all of the counts, and anything that could have been resolved. Disposition. It is the final disposition. Something on the merits, right? That is correct. But, again, Your Honor, we would stress that the ordinary course of the meaning stricken is under 2615. But it did say it was under 2615. Many court orders do not say that they're under 2615, but, again, there is no other ordinary meaning for the term stricken under the rules of civil procedure. And we have to take the ordinary rules. And if somebody at the time, one of the parties, did not believe that that adequately reflected the intention that they had, they should have corrected the order. The Hernandez case that just came out had a long dissertation by the Supreme Court about the duty of the party to make sure that they adequately reflected their intention in their own order. So why should we file Hernandez when that's the against you? I'm sorry? If we file Hernandez, then we should reverse, right? No, if you file Hernandez, you should affirm, because the whole point of Hernandez was to say, was there evidence of a final disposition, and here there was. I think I get your argument. I think you're saying because we can speculate that the only reason you can use the word strike is under 615, therefore, it had to be on the merits. No, that's not what I'm saying, Your Honor. Then how are you getting there? I'm saying that the ordinary course of meaning, which is what the law of Illinois says we have to interpret the order as, the ordinary course of that order, or the ordinary interpretation of that order, says that it was stricken. Further... Okay, so what's that mean? That would make it a final disposition on the merits. It wasn't stricken by the defendant. It was stricken, there's no doubt. Is there any doubt it was stricken by the plaintiff? Is there any doubt it was stricken by the plaintiff? Yes or no? There was a question of it, but the only affidavit is from Mr. Fowler. Okay, so you haven't been able to... No, we have not. Okay, so it's the plaintiff who did it. Now, a plaintiff, have you ever seen a plaintiff file a 615 motion against himself? We have not, Your Honor. That's not appropriate. So the word strike that we're talking about here is not the word strike that's used in 615. It would be like any other words. We would take the normal customary meaning of the word strike, which is strike, as we would other words that are used in the order. Except for the fact that if you take a look at Mr. Crowley's affidavit, he is very adamant about the fact that this is a substantive reason why he is not, why he cannot bring this claim back. And that is the reason that he... He says that they don't want the claim because it wasn't a viable claim. So you're saying they should pursue... People should not strike viable claims because they might be stuck in this catch-22. Is that what it is? We're saying that when a viable claim comes to... It wasn't a viable claim. I'm sorry, when a claim comes to its conclusion and is stricken, that the court, that unless... We would argue that a plaintiff cannot split his claim by voluntarily dismissing and resigning part of an action after the final judgment has been answered on another part of the case. Let me ask you this question. What case best supports your position? I would say... I do think that the Hudson case is very much directly on point. I would say that the Hudson case is very much directly on point and metastatic. Okay, do you have anything further to add? Okay. Just a moment. Why don't you make your concluding statement and we'll hear your thoughts. Sure. I would just emphasize that there is nothing in the Supreme Court opinion, in either Hudson or Rhine, that indicates that the dispositive claims in the earlier litigation must be either voluntary or involuntary. That does not come into the concern of the court. And while the cases that the plaintiff relied on may have been involuntary claims, that is just because the earlier claims were relating to Rule 273, which makes it an automatic final disposition. And you're asking us to affirm the decision of the trial? That is correct. Thank you, Mrs. Rozavic. Thank you. Mr. Dawson. May it please the court, my name is Dan Dawson. I represent one of the defendant athletes, Mr. Tandon. I have a short prepared statement that I think will clarify a little bit what's been spoken about today. So I'll start there and then I'll be happy to answer any questions. Mr. Tandon began defending the claims brought by the plaintiff in the Supreme Court. The 2003 case was based on the following legal theories. For closure of a leasehold mortgage, breach of contract against Mr. Tandon related to a promissory note in the amount of $1,280,000. Breach of guarantee against Amatron related to the same promissory note in the amount of $1,280,000. Breach of contract against Mr. Tandon related to a promissory note in the amount of $80,000. Breach of contract against Mr. Tandon related to a promissory note in the amount of $66,400. When the bank told you that Mr. Tandon somehow didn't alert you to the fact that there were counts four and five or that he wasn't arguing that in connection with this, the bank was completely wrong. As a matter of fact, these facts are taken out of the initial portion of Mr. Tandon's brief. In addition, it noted that the bank had incorrectly told you that there were only three counts in the 2003 case. The bank continued to deposition and petitioned for rehearing. Let's get to the... Fine. That doesn't really mean anything, does it? It actually does. So four and five, do you disagree that those claims apparently were resolved in some manner? I don't disagree. I'm not actually sure. Let's assume that they were resolved. Okay. Would you agree that then they don't need to be repled? Judge, I think that question, do they need to be repled, I think under Hudson, which we're all bound to follow, the question isn't about what needs to be repled. The question is, was there a final order in the earlier case? And that's why I think we need to step back a little bit and discuss the 2003 case. During the course of the first case in 2003, Mr. Tandon alleged affirmative defenses and a counterclaim. The affirmative defenses alleged, unlike what the bank just alluded or suggested to you, that there was a duty to mitigate damages that were sought by the bank in the million dollar note based on an energy cogeneration system, which was the subject of the loan, which was included in the million to note. Mr. Dodd, you've already said the question in this case is whether or not there was a final order. Just tell us what the final order was. Was it the September 2006 order, the February 4, 2008 order, or what order was final? Just tell us. The trial court as well as this court in the Rule 23 order. It was withdrawn, as you're aware. It was withdrawn after there was a motion for rehearing that we were not granted leave to file a response to. But answering your question, Your Honor, the final order was the order in 2006. The trial court and this court in the Rule 23 order correctly found that when the case was dismissed for want of prosecution many times and the last one was not vacated and a new action was filed, that the 2006 order striking count one was a final order. That's correct, and it also relates to what I was discussing regarding the 2003 case. There was a final order on the merits. It says for res judicata, right? It's not only a final. It doesn't say any final order, does it? It doesn't have to be something on the merits? I don't want to be rude, so I'm going to grab a... It was an order. I think... So you're saying any order. It doesn't matter what the order talks about. I think this court has previously correctly found that an order is final if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or a separate branch throughout. They didn't do any of that, did they? Of course they did. Because we've heard and the bank has admitted that that count was dismissed due to substantive reasons. Who dismissed it? The court always dismisses. No, no, no. Who asked for the dismissal? We've been told by the bank that they asked for the dismissal. And, of course, you have a burden here, so you don't disagree and your full counsel doesn't disagree with that either. So they voluntarily dismissed the count. It happens every day, doesn't it? People dismiss. And you're saying that that is an order on the merits. I'm trying to understand how that is on the merits. Because if somebody voluntarily withdraws something... Because after three years of litigation and discovery and a substantive ruling on Mr. Tandon's affirmative defenses and a dismissal of his counterclaim all related to that issue, the plaintiff determined that that count, which arose out of the same transaction of facts, was substantively incorrect and they withdrew it. And they got it stricken by the judge. An involuntary order can be final. There's nothing that says it can't be. And I think if we look at the case... You keep saying that, but there may be a case like that. I don't know. But let's take this case. In this case, the involuntary was... There was no involuntary. It was a voluntary. You're saying after discovery, they decide, you know what? If we pursue this any further, we're going to be sanctioned under 137, right? That's what they've argued. I think what they argued is that by repleting it, they were concerned that they may be sanctioned. So they had to drop it. If they didn't drop it, they probably could have been sanctioned too. So somehow that is on the merits? Yes. It is, Judge, clearly. And I think we're looking at... What case are you relying on for that? Well, Your Honor, I was relying not only on the trial court and this court. I'm talking about what law, what statute of case? I'm sorry. For the proposition that an order can be final for the reasons I just said would be... 165 LF 3rd 732 is what I quoted from, Your Honor. But if I could... But that has nothing to do with the fact situation we have here, does it? I'm not willing to concede that. Then tell me how Cole has to do with this case. Well, it's not that... Cole is defining what a final order is. And you asked me what a final order was, in our opinion. That's an easy question. Let's look at the particular... You have to take the law and the facts. Let's apply it. Great. So I'll go on more with the 2003 case. So Mr. Tandon's counterclaim in the 2003 case alleged damage is caused in part by the bank's failure to correctly disperse the funds, which were the subject of the million-dollar loan and note. The court in the 2003 case dismissed Mr. Tandon's affirmative defenses with prejudice. In doing so, the court based its opinion in part on the collateral, which was the subject of count one of the mortgage foreclosure complaint, the cogeneration equipment that was part of the leasehold mortgage. And finding there's no duty to mitigate... I think you need to focus on the orders that were entered. You know, this case presents this court with the question of rescue the bank. We need to focus on the orders that were entered. And those facts that you're reading are not assisting us in making a decision. And I would suggest, Your Honor, that they should be. And the reason for that is because the 2003 case brought these claims that all arose out of the same transaction of facts. And the count one, which had been brought previously after three years of discovery, after substantive rulings on the counterclaim related to that as well as the other counts, was dismissed admittedly by the plaintiff because it was substantively no good. Okay. And since it was substantively no good and dismissed by the plaintiff, there was no decision on the merits, correct? No. There was a striking of the complaint, even at their request, which when... What issue was resolved, counsel, when it was voluntarily dismissed? No issue was resolved. The plaintiff agreed with the defendant that count one was not meritorious after having looked at the facts and the law and then decided to dismiss it. That count one arises out of the same transaction of facts as this count. So was there a motion that you filed? We're told by the bank that there was not. You're not even told. We can look at the record. The record doesn't show any motion. Why does the record show any motion? The record is not complete, so we're not... We have to live with what we have. Did you make a motion to supplement that? No, no. The actual circuit court records are... No, no, no. We're talking about the appellate court records. Yes. I'm sorry. I thought you were talking about the actual, the record from the 2003 case. No, I'm talking about the record for us. Okay. I was talking about the record in the 2003 case. That's not the record that the appellate court has. We don't have the record from the 2003 case? I don't know that you have the entire record from the 2003 case, but what I'm saying, Your Honor, is because the plaintiff split his claims and waited so long to pursue this action that the 2003 record appears to be incomplete. And there's nothing we can do about that because that's just... Well, you could have supplemented it. No. The 2003 record. I was not counsel of records. No, you could have... We've alleged... That's important. We can't guess as to what that record is. You have this burden, okay? You agree. You have the burden on the race judicata. Is that correct? I think the recent cases have held that, yes. Okay. So you have the burden. Justice DeVito's question is a good one. And I hope I answered it. If I didn't, if you could let me know. Well, do you have anything further to add? I sure do, Your Honor. This court itself, in the case of Lane v. Calchon, 394 Illop III, 324, dealt with Hudson and dealt with it in the way that the trial court dealt with it here and your Honors had originally dealt with it. In that case, what you look at for an identity of causes of action is a transactional analysis. Under the transactional analysis, separate claims will be considered the same cause of action for race judicata purposes. If they arise from a single group of operative facts, regardless of whether different theories of relief are asserted. Thus, when count one was admittedly, substantively no longer good and the plaintiff had discovered that over years of litigation in the 2003 case, they asked the judge, assuming they're telling the truth, to strike it and the judge did. At that point, they are no longer able to avail themselves of the saving statute. Where you're going wrong is when you use the word substantively. That's not the test. The test is a decision, a final order on the merits. Isn't that the test? It doesn't say substantively. As I mentioned before, I'm simply going on the test that this court set out, which is the final order. I'm not talking about anything. What court? In what state? Well, there's an unpublished opinion by the Supreme Court, but it cites the appellate court and it doesn't say what district of Hull versus the City of Chicago that I mentioned earlier. Right, and you don't know the facts of that case. That's not the case we have here. You keep using the word substantively. That's not the test, is it? The test is exactly what I think. What's the test? The test is an order's final if it either terminates the litigation between the parties, which this one didn't, on the merits, or disposes of the rights of the parties either on the entire controversy or separate grants thereof. What's disposes mean? Disposes means exactly what it says, Your Honor. In this case, I'll tell you what it means. It means that after three years of litigation and pursuing count one, after the judge in the 2003 case striking or dismissing the counterclaim and dismissing the affirmative defenses with prejudice, It didn't dismiss. No, I'm sorry. You dismissed the counterclaim. No, the affirmative defenses were dismissed with prejudice, Your Honor.  Okay. After that occurred and three years of discovery, what that means is that then that dismissal, that striking, disposes of that branch of the dispute. Counsel, let me ask you this. Yes. How would you respond to opposing counsel's argument that this is no different than if one of the parties had become deceased or incapacitated and, therefore, planned a coup to strike that count and the court entered such an order? Well, for a couple of reasons. The first one being that there are exceptions to the rule. I haven't looked at them. There are six or more exceptions, I suspect, and one of them is a little bit of a catch-all, which if there isn't a specific one, I would say that that would encompass. Having said that, Your Honor, the bank has not let any of those apply in this case and has taken the position at the trial court and here that those are not what they're relying on. Well, I'm going to say, conceptually, how is that different? It's not an adjudication on the merits. There's still been no substantive analysis done on the claim or the issue. It's strictly a movement by the plaintiff to strike a count and the court acquiesces in that uncontested action. I'm sorry, and that may be a final order, but as I said, that specific instance might get saved by the exceptions to this rule. There are, I think, six exceptions, the sixth of which is a catch-all, and I suspect that that would fall under that. This is not such a case. This case, the bank litigated the issues arising out of the same core of operative facts for five years in the 2003 case. When the case that KWC… Why is that significant? You keep alluding to the passage of time. Okay. Why is that significant? What's the authority for your assessment of that significance? Well, Hudson and its project, and the reason for that, Your Honor, is that one of the thoughts behind claim splitting is, hey, you had your chance. You can't later on try to raise something that arises out of the same transaction. In this case, the bank had their chance. They had five years of litigation where they had the chance to determine this. In that five years, they actually determined that count one needed to be stricken because there was no good faith basis in law and fact to have that count. Once there is a decision, once there is that changing of the first case, then while the safety statute is still in effect and you can bring the cause of action as the Supreme Court said in Hudson, the defense of res judicata can be raised. It doesn't eliminate the safety statute. It doesn't change the safety statute. It doesn't take the place of the safety statute. But the safety statute can then let you refile it, and it doesn't have to be the exact same. Okay? You refile it. So it doesn't have to be the exact same. No. Here's a hypothesis. Doesn't have to be the same. Hypothesis. All the five years and all the discovery and everything else, the only difference is that after five years, the plaintiffs do not voluntarily strike count one. Five years, don't voluntarily strike count one. And then the case, they decide to, instead of striking, they dismiss the case. They voluntarily drop the case. And then they bring it back. Now, the only difference now is there was not that order in 06. Okay. Would that change using your still, they still had the motions on your counterpoint. They still have those rulings. Would the result be the same? I'm not sure I understood the question. But what I can tell you is instead of count one being voluntarily dismissed, I mean, when it was dismissed, it went to the law division. But instead of that, that never happened. Okay. Otherwise, everything else, and they drop the case. They voluntarily dismiss the case and they refile it. Because I'm trying to get at the counter, which is what you're getting at. Yes. If, leave it alone, count one. Just the fact of the counterclaim and the affirmative offenses and then the claims, that ruling, is that enough to prohibit, or is that enough to make race due to count? I think it could be. But let me answer your question by telling you, Your Honor, the procedural differences that were involved in the trial court so there's no confusion. So in this case, Mr. Tandon is in a different procedural and factual position than Amatron. In the 2009 case, there were no motions for summary judgment brought by the bank against Mr. Tandon. What happened was Mr. Tandon fled res judicata as an affirmative defense. The bank and Amatron- But you haven't answered my question. And I think I did by saying I think it would be enough. It would be enough. But both of them- What case do you rely on? Because I'm centering on your argument. Because you're making two arguments, aren't you not? Are you saying that the counterclaim is a different argument than the count one being voluntarily dismissed, right? Am I right or wrong? I would not characterize it as a different argument. Because the point of claim splitting is if the time has been spent on this action where there's been a decision regarding something in the original case, then that party shouldn't be allowed to split their claims in another case. That's what I'm talking about. There is no count one that's still planted. So we're just talking about your counterclaim. Okay. What is the splitting of the claim? And what I said, Your Honor, is I think it may still apply. But the reason I'm telling you that we never got to that issue is because of the procedural status in this case in the trial court. So in the trial court in this case, what happened was Mr. Tandon alleged a form of offensive res judicata. Amatron alleged an offensive res judicata. For some reason, Amatron and the bank filed cross motions for summary judgment regarding res judicata, to which the judge in the trial court said, I think on this one issue it may be dispositive, which was the same issue. So we joined in Amatron's motion for summary judgment. So no one reached the issue. So you're waiving that argument? No. You never reached that issue, so that's not an issue we should consider, your argument of counterclaim. No, you should. Why? You just said it wasn't an issue. No, I said it wasn't. So we didn't have technically a motion for summary judgment based on that specific part. That's something we shouldn't consider because you didn't raise it. No, we did raise it on appeal. On appeal, but not below. We mentioned it below. You mentioned it, but you didn't. Mr. Dawson, why don't you summarize your argument? The plaintiff's 2009 case arises out of the same set of operative facts as the 2003 case. Oh, I'm sorry. Before I get off that point, if I could just point you to a case. It would be Cary v. Watsika, 870F2nd567, which actually deals with counterclaims after the Hudson case. It was decided in 2001. I'm bound by decisions in federal cases. I didn't say you're bound. I just said that may shed some light on what the issues are. In this case, as in Lane v. Kalkheim, a case this very court decided in 2009 shortly after Hudson, there is an identity of the causes of action based on the transactional test set out in the case previously ruled on by this court. Thus, if there was a final order disposing of the rights of the parties on a branch of the dispute, res judicata applies to defeat plaintiff's 2009 action. In Mr. Tandon's case, both the trial court and this court in its Rule 23 order correctly found the order striking count one of the 2003 case became final by the plaintiff not vacating the DWP and filing a new and separate action. That made the prior order final. Specifically, by failing to pursue all the claims from the 2003 case, the litigation against Bank One Financial terminated after those claims. The effect of the termination was to maintain those claims in the form they were at the time of the DWP order. At the time of the February 4, 2008 DWP order, count one of Bank Financial, the foreclosure count, was stricken. Because the plaintiff failed to vacate the order or re-file that particular claim, the DWP order became a final judgment and a determination on the merits. Plaintiff's argument that res judicata cannot apply to this case because the order disposing of count one in the 2003 case was a voluntary order, not an involuntary one, completely misses the point. An order need not be involuntary to be a final order or an adjudication on the merits. Voluntary orders can be final. For res judicata purposes, the finality of the order and the prohibition against claim splitting is what matters. So as a final thought, Your Honor, I'd just like to leave with this. The issue in Hudson is claim splitting. It's not the re-filing. It's not the identity of the re-filed cases. It's the claim splitting, which is what occurred in this case. And if you're looking for the record on the substantive rulings, in addition to the order striking the count one, which became final upon the DWP, and the re-filing of a separate cause of action, the five-pound complaint brought by the bank is at 2574. And the 2003 case, the substantive reply, which contains the 2003 case judge's ruling, is at 814. If you have any other questions, I'd be happy to answer them. You're asking the court to affirm the decision? Yes, I'm sorry, Your Honor. And for all those reasons as well, and I would just leave with this. The banks have been allowed to file three briefs in this case. There was an order prior to a motion for re-hearing. We did not receive an order ruling on the petition for re-hearing. We received an order setting it for oral argument. We'll see to it that you get the order. Well, the thing is, Your Honor, if the petition for re-hearing is granted, we should have been granted leave to file a brief dealing with that and maybe would have – The petition was mooted in Rule 23, the order was withdrawn. Okay. Well, as a result of everything that we've put in the briefs and said here today, Mr. Tanden requests the court affirm the ruling of the trial court, entering judgment summarily against the plaintiff, as required by the Supreme Court in Hudson and the related cases. Thank you very much. Thank you, Mr. Dawson. Mr. Sullivan, do you have any rebuttal? Briefly, Your Honor. And my apologies, because I think we've all seriously underestimated the time within which we would make our remarks. This reminds me of the old Clara Peller Wendy's commercial, it's that instead of substituting where's the beef, you keep asking where's the final order, and I still haven't heard a good answer to that question because, indeed, there is none. The entire argument that they've just made in the response, that you have to look beyond the four corners of the order to determine the character of it, based on the motivation of the plaintiff's counsel in non-suiting or taking a voluntary dismissal of count one, was expressly rejected by Hudson. Hudson cautions, quote, an attorney's subjective motivation in taking a voluntary dismissal is not part of a race judicata analysis, end quote. Very good reason for that, very sound logic. You don't want piecemeal appeals and subjective thoughts to enter into all of these analyses, which are purely objective. Objectively, that order entered September 8, 2006, is without prejudice. The transfer order that accommodated it, written within a day thereof by the same judge, says plaintiff non-suited, count one. There was never a final order. Race judicata cannot ever apply under those circumstances, and for that reason the trial court did not get it right. We respectfully request that that order be reversed. Thank you. Thank you. I want to thank the parties for their arguments, their briefs, and this matter will be taken into advisement and the court stands in recess.